IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RAYMOND A. SEVER,                    :
                                     :
              Plaintiff              :
                                     :
     vs.                             :     CIVIL ACTION NO. 3:CV-00-1271
                                     :     (CHIEF JUDGE VANASKIE)
WILLIAM J. HENDERSON,                :
POSTMASTER GENERAL, et al.,          :
                                     :
              Defendants             :

## MEMORANDUM

This case arises in the wake of the termination of Plaintiff's employment by the United

States Postal Service after several co-workers claimed that he had threatened a supervisor and

observed Plaintiff mimicking the action of firing a handgun at his supervisor.  At issue on

motions for summary judgment filed by pro se Plaintiff Raymond Sever and the Defendants is

whether there is sufficient evidence to warrant a trial on Plaintiff's disability discrimination claim

brought under the Rehabilitation Act, 29 U.S.C. § 791 et seq.  Defendants' motion will be

granted and judgment will be entered in their favor for three reasons: first, Plaintiff has failed to

present any evidence that his alleged mental disorder, which purportedly caused him to engage

in the threatening conduct (for which he was successfully prosecuted under 18 U.S.C. § 115),

substantially limited any major life activity at the time that he was fired; second, Plaintiff has not

shown that Defendants Robert Spaulding and Jeff Ruth knew or had reason to know that

Plaintiff was substantially limited in a major life activity at the time they determined that Plaintiff should be fired for his threatening conduct; and third, an employer does not violate the Rehabilitation Act by firing an employee for conduct that threatens the life of co-workers, even if that conduct was the product of a mental disorder.

BACKGROUND

Mr. Sever began working for the United States Postal Service on May 31, 1980.  (Defs' Statement of Material Facts ("SMF") ¶ 2.)[1]   On March 14, 1994, he received a warning letter from Honesdale Postmaster Robert Spaulding for the failure to follow instructions on four separate occasions and for the willful delay of accountable mail.  The specific charges in the letter were as follows:

> Charge 1 - You are charged with failure to follow instructions.  On 1/24/94 a discussion was given to you about close out time and the deposit was to be dispatched every night.  Again, on 02/16/94 Ed DeGroat hah [sic] a second discussion about the deposit not going out.  On 02/25/94 registered mail was not dispatched. [sic] as instructed.  On 03/07/94 and again on 03/08.94 [sic] the last truck was held up because the deposit was not ready for 5:50 dispatch time.

> Charge 2 - You are charged with willfull [sic] delay of accountable mail.  On 02/25/94 three (3) registered articles were not sent on the last dispatch truck.  Your statement was quoted as saying that two PTF clerks refused to sign the register bag.  However you were instructed on 02/16/94 that all deposits and registers be sent every night.

---

[1] Citation to the moving party's statement of material facts signifies that the parties agree to that particular fact.

(Defs' Ex. 15, Dkt. Entry 82.)  After discussing the specific incidents underlying both charges,

the letter further provided:

> It is hoped that this official letter of warning will serve to impress upon you the seriousness of your actions and that future discipline will not be necessary.  If you are having difficulties which I may not be aware of or if you need additional assistance or instructions for improving your performance, please call me, or you may consult with your other supervisor, and we will assist you where possible. However, I must warn you that future deficiencies will [r]esult in more severe disciplinary action being taken against you.  Such action may include suspensions, reduction in grade and/or pay, or removal from the Postal Service.

(Id.)

Approximately one hour after Mr. Sever received the warning letter, he discussed the

matter with a fellow employee, David Rollison.  (Defs' Ex. 15, p.3.)  According to Defendants,

Mr. Sever told Mr. Rollison that he would buy a gun and come back to the post office if he were

ever dismissed from the Postal Service.  (Id.)  Mr. Sever contends that he never made such a

statement. (Sever Aff. ¶ 8, Dkt. Entry 88.)

On March 15, 1994, Mr. Sever formed his fingers into the shape of a gun on several

occasions and pointed his finger towards Mr. Spaulding and/or SPO, Ed DeGroat.  (Defs' Ex.

15, p. 3.)  He also made a noise as if firing a gun.  (Id.)  Mr. Sever contends that he only made

two "finger points" and that he never said "pow."  (Sever Aff. ¶¶ 6-7, Dkt. Entry 88.)

On March 15, 1994, Mr. Spaulding placed Mr. Sever on "off-duty without pay status"

because of Mr. Sever's threatening gestures. (Defs' Ex. 15, p. 2.)  On March 24, 1994, Mr.

Sever and his attorney attended a labor management meeting with Mr. Spaulding and Jonathan Lister, a labor relations specialist manager.  (Sever Aff. ¶ 2, Dkt. Entry 88; Spaulding Dep. at 16-17, Dkt. Entry 81.)  At the meeting, Mr. Sever and his attorney informed Mr. Spaulding and Mr. Lister of Plaintiff's treating psychiatrist's "initial findings of Post-Traumatic Stress symptoms."  (Sever Aff. ¶ 3, Dkt. Entry 88.)  Mr. Sever's attorney requested that no adverse decision be made until his treating physician could further evaluate "his medical or psychological status or his condition." (Spaulding Dep. at 19.)[2]  Mr. Sever then made a written request to Mr. Lister to hold his position open until his doctor could complete his evaluation. (Sever Aff. ¶ 4, Dkt. Entry 88.)  He further offered to make his doctor's findings and reports available to postal management at the earliest possible date.  (Id. ¶ 5.)  The record does not

---

[2] During Mr. Spaulding's deposition, the following exchange occurred:

> Q. Wasn't it relayed that Ray Sever was seeing a psychologist?
> A. I believe it was.
> Q.  And isn't it true that Ray Sever or someone on his behalf stated that he found the situation concerning registered mail handling at the Honesdale Post Office . . . particularly stressful?
> A. I don't remember that.
> Q. Didn't Ray Sever or someone on his behalf state that his treating psychiatrist had observed symptoms of post-traumatic stress disorder?
> A. I don't remember that either.
> Q. Isn't it true that Raymond Sever requested that no adverse decision be made until his treating psychiatrist could further evaluate him, that is further assess his medical or psychological status or his condition?
> A. I believe your attorney requested that . . . .

(Spaulding Dep. at 18-19, Dkt. Entry 81.)

4

state when, if ever, Defendants received the medical reports.

On March 31, 1994, the Grand Jury for this District returned an indictment against Mr.

Sever, charging him with violating 18 U.S.C. § 115, Influencing, Impeding or Retaliating Against

a Federal Official by Threatening.  The indictment was premised upon the accusation that Sever

had mimicked the action of pointing a gun at a supervisor and pulling the trigger.[3]

By letter dated April 4, 1994, Sever was fired.  The termination letter stated:

> You are hereby notified you will be removed from the U.S. Postal
> Service on May 13, 1994.  The reasons for this action are as
> follows:
>
> Charge 1: On March 14, 1994 . . . you were issued a Letter of
> Warning by the Officer in Charge.  Approximately one hour later,
> you discussed this Letter of Warning with fellow employee, D.
> Rollison.  You told him if you were ever dismissed from the Postal
> Service you would go out and buy a gun and come back to the post
> office.  On the morning of March 15, 1994, you were observed on
> several instances forming your fingers into the shape of a gun,
> aiming at Officer-in-Charge, Robert Spaulding and/or SPO, Ed
> DeGroat, and making a noise as if firing a gun.  As a result of your
> actions, you were placed in emergency off-duty status.  Prior to
> leaving the facility, you indicated to SPO DeGroat that this was the
> first time in your life you thought you could hurt someone.

(Defs' Ex. 15, p.3, Dkt. Entry 82.)  The letter was signed by Defendants Spaulding and Jeff

Ruth, the Manager of Operations for the Post Office.

---

[3]      On June 21, 1994, Mr. Sever was convicted of violating 18 U.S.C. § 115.  (Defs'
SMF ¶ 10.)  He was sentenced by the Honorable Edwin M. Kosik of this Court on February 13,
1995.  (Defs' Br. in Supp. of Mot. for Summ. J. at 1-2.)  His appeal to the Third Circuit was
unsuccessful.

Mr. Spaulding testified at his deposition that it was solely his decision to terminate Mr. Sever.  (Spaulding Dep. at 98, Defs' Ex. 17, Dkt. Entry 82.)  He further testified that he was not aware that Plaintiff labored under any mental disability at the time he decided to terminate Mr. Sever.  (Id. at 98-99.)  Mr. Ruth testified that "there was nothing that would lead [him] to believe that . . . [Mr.] Sever had any type of handicap, mentally [or] physically . . . ."  (Ruth Dep. at 58, Dkt. Entry 81.)  Mr. Ruth further testified that he did not take any employment action against Mr. Sever because of a mental disability.  (Id. at 75.)

After Defendants terminated Mr. Sever, he filed a formal complaint with the EEOC alleging, not disability discrimination, but gender discrimination.  (Defs' SMF ¶ 12.)  An Administrative Judge granted an Agency request for recommended findings and conclusions of law without a hearing.  (Id. ¶ 13.)  The Postal Service adopted the administrative judge's findings and conclusions of law and issued its final agency decision.  (Id. ¶ 14.)  Mr. Sever appealed the final agency decision to the EEOC Office of Federal Operations ("OFO").  (Id. ¶ 15.)  The OFO affirmed the Postal Service's final decision.  (Id. ¶ 16.)  Mr. Sever requested reconsideration of the OFO decision, which was denied.  (Id. ¶ 17.)  The OFO advised Mr. Sever of his right to file a civil action.  (Id.)  On July 17, 2000, Mr. Sever commenced this action under the Rehabilitation Act.  (Id. ¶ 18.)

On March 20, 2001, Defendants moved for summary judgment, arguing that Mr. Sever failed to exhaust his administrative remedies as to his disability discrimination claim.  By

6

Memorandum Opinion dated April 22, 2002, Defendants' motion for summary judgment was denied because an affidavit from Plaintiff's treating psychiatrist, Guido Boriosi, M.D., sufficed to raise a genuine dispute of fact material to the application of the doctrine of equitable tolling. Specifically, there was a question as to whether Plaintiff's mental health disorder impaired his ability to timely pursue an administrative claim of disability discrimination.

Following a telephone conference on May 24, 2002, this Court issued an order providing for a ninety day period of discovery limited to (1) whether Mr. Sever was disabled under the Rehabilitation Act; and (2) whether Defendants knew about the alleged disability. By Order dated September 13, 2002, litigation in this matter was stayed while Plaintiff considered whether to continue to pursue the action. At Plaintiff's request, the stay was lifted on February 6, 2003, and the discovery period on the questions of disability and Defendants' knowledge thereof was re-opened for a period of 90 days. After several extensions of the discovery period and resolution of discovery disputes, Mr. Sever and Defendants filed motions for summary judgment.

In moving for summary judgment and opposing the defense motion, Plaintiff has relied extensively on two affidavits signed by Dr. Boriosi, the first dated May 25, 2001 and submitted in opposition to Defendants' first summary judgment motion, and the second dated May 13, 2004. Dr. Boriosi's first affidavit indicates that he initially observed symptoms of post-traumatic stress disorder. (Boriosi Aff. of 5/25/01 at at 4.) Dr. Boriosi opined that the written warning

7

charging Sever with intentionally delaying the U.S. mail was particularly stressful for Mr. Sever because the charge had criminal implications.  (Id. at 3.)  Dr. Boriosi further opined that the stress caused Mr. Sever to react spontaneously by pointing his finger in what postal officials "allegedly" viewed as a threat.  (Id.)

Dr. Boriosi stated that his continuing observations of Sever resulted in a diagnosis of obsessive compulsive disorder ("OCD").  (Id. at 4.)  It is unclear when Dr. Boriosi arrived at this conclusion.  According to Dr. Boriosi, OCD causes an individual to have intrusive thoughts of a frightening or disturbing nature which in turn may cause the person to do things repeatedly.  Dr. Boriosi related how the OCD impacted Mr. Sever as of the time of his affidavits (2001 and 2004).  He did not, however, express an opinion as to Sever's condition in March and April of 1994, and how that condition affected performance of major life activities.

Dr. Boriosi did opine that Mr. Sever's OCD had affected and continues to affect his ability to sleep and concentrate. (Boriosi Aff. of May 13, 2004 at 1.)  Dr. Boriosi further stated that Mr. Sever "at one time, did have repeated, intruding and involuntary images of violence," but he stressed that "those thoughts or images are, in my professional opinion, not something he would have acted upon." (Boriosi Aff. of May 25, 2001 at 6.)  According to Dr. Boriosi, Mr. Sever's OCD also affects his ability to learn and complete routine tasks.  (Boriosi Aff. of May 13, 2004 at 2.)  Dr. Boriosi found that Mr. Sever was preoccupied with details, rules, order, and organization at the expense of flexibility and efficiency.  (Boriosi Aff. of May 25, 2001 at 6.)  Dr.

Boriosi further stated that Mr. Sever's OCD "can be reasonably controlled through medication and talk therapy, but is expected to be a life long condition." (Boriosi Aff. of May 13, 2004 at 2.) At one point, Mr. Sever was taking medication and undergoing talk therapy, which allowed his condition to improve "significantly." (Boriosi Aff. of May 25, 2001 at 8.)  The record does not state when and how long Mr. Sever was taking medication and undergoing therapy.  Dr. Boriosi notes, however, that Mr. Sever has sought treatment less frequently due to financial concerns. (Id.)

As for accommodation to allow resumption of employment, Dr. Boriosi's 2004 affidavit states:

> [Mr. Sever] would function best in a position that he has already mastered. He has demonstrated [an] ability as a window-distribution clerk for 14 years.  His problem surfaced over the handling of registered mail in a manner inconsistent with postal regulations.  [Mr. Sever] simply needs an accommodation in which new directives or procedures are given in writing to protect him from the adverse circumstances arising from the  potential loss of such mail as a result of those procedures.  Compared to the average person, [Mr. Sever] can do his job with the accommodation of having clearly defined duties, standards and responsibilities.  Minor deviations are not expected to pose a problem since they have never posed a problem for [Mr. Sever] in the past.  This accommodation would also keep [Mr. Sever] from overreacting to the stimulus that caused him to point his finger.

(Boriosi Aff. of May 13, 2004 at 2-3.)

Defendants have not submitted any psychiatric evidence on the summary judgment record.  Instead, they maintain that Dr. Boriosi's opinions do not suffice to create a genuine

9

dispute of material fact on the questions of whether Plaintiff suffered from a mental impairment that substantially limited a major life activity at the time he was fired and whether Defendants knew or had reason to know that he was substantially limited in a major life activity at that time.

DISCUSSION

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law.  See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).  "Facts that could alter the outcome are material facts." Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 197 (3d Cir.), cert. denied, 513 U.S. 1022 (1994).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Initially, the moving party must show the absence of a genuine issue concerning any material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  See Continental Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982).  Once the moving party has

satisfied its burden, the nonmoving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257.  Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials.  See Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).  Rule 56 requires the entry of summary judgment if there was adequate time for discovery and a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

The elements of a claim under § 504(a) of the Rehabilitation Act are very similar to the elements of a claim under Title I of the Americans with Disabilities Act, 42 U.S.C. § 1211.  See Mengine v. Runyon, 114 F.3d 415, 420 n.4 (3d Cir. 1997).[4]  To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must show: (1) that the plaintiff has a disability; (2) that the plaintiff is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that the plaintiff was nonetheless terminated or otherwise prevented from performing the job.  See Donahue v. Consol. Rail Corp., 224 F.3d 226, 229 (3d Cir. 2000); Mengine, 114 F.3d at 418; Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996).  The plaintiff must also make a prima facie showing

---

[4] Section 504(d) of the Rehabilitation Act, 29 U.S.C. § 794(d) provides that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990."

11

that a reasonable accommodation is possible.  See Shiring, 90 F.3d 827 at 831.  If the plaintiff is able to establish a prima facie case, the defendant then bears the burden of proving, as an affirmative defense, that the accommodations requested by the plaintiff are unreasonable, or would cause an undue hardship on the employer.  See id.

Under the Rehabilitation Act, a "disability" is defined as: "(i) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (ii) a record of such an impairment; or (iii) being regarded as having such an impairment."  Wilson v. Pa. State Police Dep't, No. Civ. A. 94-CV-6547, 2004 WL 875573, at *2 (E.D. Pa. Mar. 19, 2004) (citing Sutton v. United Air Lines, 527 U.S. 471, 478 (1999)).  In the present case, Mr. Sever contends that he was disabled under the first prong of the disability definition because his obsessive compulsive disorder substantially limited him in the major life activities of sleeping, concentrating, learning, and performing routine tasks.  Mr. Sever further seems to argue that he was regarded as disabled under the third prong of the disability definition because he informed Defendants that his physician made initial findings of post-traumatic stress symptoms.

To determine whether the plaintiff is disabled under the first prong of the disability definition, a court must conduct a three-step inquiry.  First, the court must determine whether the plaintiff's condition is a physical or mental impairment.  Second, the court must identify a life activity affected by the impairment and determine whether it constitutes a "major life activity."  Finally, the court must determine whether the plaintiff's impairment had a substantial limit on the

identified major life activity. See Bragdon v. Abbott, 524 U.S. 624, 631 (1998). These determinations are to be made as of the time the adverse employment action was taken. See EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 379 (4th Cir. 2000) ("the date of an adverse employment decision is the relevant date for determining whether a plaintiff is a 'qualified individual with a disability'"); Griffith v. Wal-Mart Stores, Inc., 135 F.3d 376, 380 (6th Cir. 1998), cert. denied, 526 U.S. 1144 (1999).

The regulations define mental impairment as "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). The term "major life activities" refers to "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Thus, "major life activities" refers to activities that are of central importance to daily life. See Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002).

An impairment "substantially limits" a major life activity if the individual is

> [u]nable to perform a major life activity that the average person in the general population can perform; or [is] significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j); accord Toyota Motor Mfg., 534 U.S. at 195-96. In determining whether

13

an individual is substantially limited in a major life activity, the regulations instruct that the

following factors should be considered: "(1) [t]he nature and severity of the impairment; (2) [t]he

duration or expected duration of the impairment; and (3) [t]he permanent or long term impact, or

the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. §

1630.2(j)(2).  Thus, "[i]t is insufficient for individuals attempting to prove disability status under

this test to merely submit evidence of a medical diagnosis of an impairment." Toyota Motor

Mfg., 534 U.S. at 198.  Instead, a claimant must "prove a disability by offering evidence that the

extent of the limitation [caused by their impairment] in terms of their own experience . . . is

substantial." Id.

A court must also assess the limitation of a major life activity in light of any corrective

measures the plaintiff uses to mitigate the impairment. See Sutton v. United Air Lines, Inc., 527

U.S. 471, 488 (1999); Fiscus v. Wal-Mart Stores, Inc., 385 F.3d 378, 385 (3d Cir. 2004).  An

issue arises as to whether a plaintiff is substantially limited in a major life activity if the plaintiff

fails to avail himself of mitigating measures.  Although the Third Circuit has not addressed the

issue, some courts will only consider the mitigation that the plaintiff has actually undertaken in

determining whether the plaintiff is substantially limited in a major life activity. See, e.g., Nawrot

v. CPC Int'l, 277 F.3d 896, 904 (7th Cir. 2002) (stating courts do not have a license to "meander

in 'would, could, or should-have' land" and will "consider only the measures actually taken and

consequences that actually follow"); Finical v. Collections Unlimited, Inc., 65 F. Supp. 2d 1032,

14

1037-38 (D. Ariz. 1999) (refusing to speculate on whether Plaintiff would be disabled if Plaintiff used a hearing aid); Haworth v. Proctor & Gamble Mfg. Co., No. Civ. A. 97-2149-EEO, 1998 WL 231062, at *6 (D. Kan. Apr. 30, 1998) (declining to take into account effects of medications Plaintiff does not take regularly for financial/insurance coverage reasons); see also Capizzi v. County of Placer, 135 F. Supp. 2d 1105, 112-13 (E.D. Cal. 2001) (holding that Plaintiff's failure to avail himself of corrective measures reduces Plaintiff's damages award but does not defeat the Plaintiff's disability discrimination claim). Other courts have held that a plaintiff's failure to avail themselves of mitigating measures defeats a disability discrimination claim.  See, e.g., Johnson v. Maynard, No. 01 Civ. 7393(AKH), 2003 WL 548754, at *4 (S.D.N.Y. Feb. 25, 2003) (finding that Plaintiff failed to establish that she was substantially limited in a major life activity because she failed to take available medicine that she knew would allow her to function normally); Hooper v. Saint Rose Parish, 205 F. Supp. 2d 926, 929 (N.D. Ill. 2002) (finding Plaintiff failed to establish that she was disabled because she had an opportunity to mitigate her symptoms and inexplicably did not do so); Tangires v. Johns Hopkins Hosp., 79 F. Supp. 2d 587, 596 (D. Md.), aff'd, 230 F.3d 1354 (4th Cir. 2000) (finding that Plaintiff's asthma did not substantially limit any major life activities because Plaintiff refused to comply with her doctor's recommendations to take steroids).

In the present case, Plaintiff seems to argue that he is substantially limited in the major life activities of sleeping, concentrating, learning, and completing routine tasks as a result of his

OCD.  He relies on Dr. Boriosi's affidavits as the factual premise for this assertion.  The shortcoming of this approach is that Dr. Boriosi does not opine as to Mr. Sever's condition at the time of the challenged employment action.  Dr. Boriosi initially did not diagnose OCD.  He opined that Mr. Sever was suffering from post traumatic stress symptoms induced by the disciplinary reprimands issued in March of 1994.  There is no evidence that Plaintiff was substantially limited in any major life activity at that time.

Furthermore, Dr. Boriosi did not attribute Mr. Sever's disciplinary problems to learning difficulties or inability to concentrate.  Instead, Dr. Boriosi stated that Sever's obsessive-compulsive personality caused him to resist management's perceived failure to enforce postal regulations on handling registered mail.  It was Mr. Sever's purported refusal to allow the rules to be bent that resulted in the initial disciplinary action.  (Boriosi Aff. of May 25, 2001 at 7.)  Thus, Dr. Boriosi declares that "when faced with disciplinary action amid strict financial accountability his obsessive-compulsive personality (a good trait) elevated to the level of the disorder . . . ."  (Id.)  Dr. Boriosi concluded that "the pressure associated with [Sever's] situation at the postal service caused his condition and it subsequently gained strength to seriously interfere with his normal life functioning."  (Id. at 8.)  Notably, the accommodation suggested by Dr. Boriosi –  new directives or procedures on mail handling be given to Plaintiff in writing to protect him from the adverse circumstances arising from the  potential loss of such mail – does not suggest any substantial limitation in any major life activity.

16

Plaintiff's own evidence, therefore, compels the conclusion that Plaintiff was not substantially limited in some major life activity at the time he was fired.   Plaintiff, of course, must establish that his "disability existed <u>at the time of the discriminatory act</u>." <u>Kocsis v. Multi-Care Mgmt., Inc.</u>, 97 F.3d 876, 884 n.13 (6th Cir. 1996); <u>accord</u>, <u>Nowak v. St. Rita High School</u>, 142 F.3d 999, 1003 (7th Cir. 1998).   "The court must examine how the physical impairment affected the major life activity at the time of the allegedly discriminatory act because the plaintiff must establish that his disability existed at the time of the discriminatory act." <u>Reid v. Runyon</u>, No. 6:98-CV-129, 2000 WL 271732, at *3 (E.D. Ky. Feb. 29, 2000), <u>aff'd</u>, 34 Fed.Appx. 469 (6th Cir. May 2, 2002) (Table).   Dr. Boriosi's affidavits do not address the question of Plaintiff's functioning at the time he was fired.   Instead, they concern the impact of Plaintiff's OCD after he was discharged and convicted under 18 U.S.C. § 115.   The fact that a debilitating condition becomes disabling after the alleged discriminatory act is not sufficient.   <u>See</u> <u>Rebarchek v. Farmers Co-Op Elevator and Mercantile Ass'n</u>, 60 F. Supp. 2d 1145, 1151 (D. Kan. 1999); <u>Rondon v. Wal-Mart, Inc.</u>, No. C-97-0369 MMC, 1998 WL 730843, at *4 (N.D. Cal. Oct. 8, 1998).

At the summary judgment stage, the plaintiff has the obligation of presenting some evidence of a condition that substantially impaired a major life activity at the time of his discharge.   In this case, Mr. Sever has presented no such evidence.   On this ground alone,

Defendants are entitled to summary judgment.[5]

Even if there were evidence of a condition that substantially impaired a major life activity in March and April of 1994, Plaintiff must nonetheless offer evidence that Defendants had knowledge of the disability at that time.  See Kocsis, 97 F.3d at 884 ("[T]he defendant cannot

---

[5]Plaintiff also seems to argue that he was "regarded as" disabled due to Dr. Boriosi's initial findings of post traumatic stress symptoms.  To establish that the plaintiff was "regarded as" disabled, the plaintiff must show that the plaintiff has:

> (1) a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
> (2) a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
> (3) none of the impairments defined [by the regulations] . . . but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l)(1)-(3).  "[T]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action."  Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996).  Instead, the plaintiff must show that the employer believed that a major life activity was substantially limited by the plaintiff's impairment.

As discussed above, Mr. Sever  "shar[ed] Dr. Boriosi's initial findings of Post-Traumatic Stress symptoms" with Mr. Spaulding and Mr. Lister at the meeting on March 24.  Mr. Sever's attorney requested that no adverse decision be made until his treating physician could further evaluate his "medical or psychological status or his condition." (Spaulding Dep. at 19.)  The record fails to disclose whether Dr. Boriosi's initial findings of Post Traumatic Stress symptoms suggested that Mr. Sever was substantially limited in any major life activity.  The record also fails to show that Defendants regarded Dr. Boriosi's initial findings as indicating that Plaintiff was substantially limited in some major life activity.  Under Kelly, the mere fact that Defendants were aware that a mental health care professional found Plaintiff to be exhibiting symptoms of post traumatic stress disorder is insufficient to show that he was regarded as disabled.

discriminate 'because of' a disability if it has no knowledge of the disability."). As explained in

Hedberg v. Indiana Bell Telephone Co., Inc., 47 F.3d 928, 932 (7th Cir. 1995):

> [A]n employer cannot be liable under the ADA for firing an
> employee when it indisputably had no knowledge of the disability.
> At the most basic level, it is intuitively clear when viewing the
> ADA's language in a straightforward manner that an employer
> cannot fire an employee "because of" a disability unless it knows of
> the disability. If it does not know of the disability, the employer is
> firing the employee "because of" some other reason.

Accord Morisky v. Broward County, 80 F.3d 445, 448-49 (11th Cir. 1996); Long v. Thomson

Industries, Inc., No. Civ. A. 99-CV-1693, 2000 WL 1586078, at *7 (E.D. Pa. Oct. 24, 2000) ("To

establish disability discrimination, . . . courts have uniformly required proof that the employer

acted with an awareness of the disability itself to satisfy the causation requirement.").

Similarly, where, as here, a plaintiff claims that the employer failed to provide a

reasonable accommodation, the plaintiff must show that the employer was aware of the

employee's disability. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 563 (7th

Cir. 1996). "In other words, the employer must know of both the disability and the employee's

desire for accommodations for that disability." Taylor v. Phoenixville School District, 184 F.3d

296, 313 (3d Cir. 1999). The plaintiff may rely upon either actual or constructive knowledge of

the alleged disability. Long, 2000 WL 1586078, at *7.

In this case, the parties were directed to engage in discovery on the question of whether

Defendants had the requisite knowledge of Mr. Sever's alleged disability in order to support a

disability discrimination claim.  Mr. Spaulding, Plaintiff's supervisor who made the decision to terminate his employment, testified that he was not aware that plaintiff had a mental disability at the time he took the employment actions in question.  (Spaulding Dep. at 98-99).  Mr. Ruth, Spaulding's supervisor, testified that he concurred with the decision to terminate Plaintiff's employment and had no awareness that Plaintiff had a "mental disability."  (Ruth Dep. at 74-75.)[6]

Mr. Sever points out that on March 24, 1994, about ten days before the termination letter, he and his attorney informed Mr. Spaulding of "Dr. Borisi's initial findings of Post-Traumatic Stress symptoms."  (Sever Aff. at ¶ 3.)  Sever also points out that, by handwritten letter dated March 26, 1994 addressed to Jonathon Lister, a Postal Service labor relations specialist manager who accompanied Mr. Spaulding to the March 24, 1994 meeting, Mr. Sever requested that any decision that may adversely affect his employment be deferred until his doctor could provide "a more complete prognosis of [his] condition."

The fact that plaintiff conveyed a health care professional's initial findings of post-traumatic stress disorder does not support an inference that Defendants were aware of a

---

[6] Plaintiff submitted a "Terminal Leave Worksheet" stating that the "date of separation" was May 28, 2002.  (Ex. I, Dkt. Entry 93.)  Plaintiff fails to provide any background information as to this worksheet.  Plaintiff seems to argue that he was not actually terminated until May 28, 2002, and as a result, Defendants were aware of Dr. Boriosi's affidavit containing his medical findings at the time of his firing.  (Pl's Br. in Opp'n to Defs' Mot. for Summ. J. at 9-10.)  This argument is unavailing. The record indisputably shows that he was fired in 1994, and there is absolutely no evidence that he worked for the Postal Service after that date.

disability.  Although post traumatic stress disorder may constitute a mental impairment for

purposes of the anti-discrimination law, it does not follow that the impairment is disabling.

Furthermore, simply informing an employer of a particular condition is not tantamount to

providing the employer with knowledge that the employee is substantially limited in some major

life activity.  "Vague or conclusory statements revealing an unspecified incapacity are not

sufficient to put an employer on notice of its obligations under the ADA." Morisky, 80 F.3d at

448.

       In this case, it is evident that Mr. Sever was seeking to explain that his threatening

conduct was a by product of post traumatic stress disorder.  Proving a causal relationship

between his threatening conduct and an alleged mental condition would not, however, support

an inference that he was substantially limited in any major life activity.  Nor would awareness of

a preliminary diagnosis of a mental condition as a causative factor for threatening conduct

support an inference of knowledge by the employer that the employee was substantially limited

in some major life activity.

       This case stands in stark contrast to the facts presented in Taylor v. Phoenixville School

District,184 F.3d 296 (3d Cir. 1999).  In Taylor, a secretary for a school principal sued the

Phoenixville School District for the failure to accommodate her disability resulting from bipolar

disorder.  In determining whether the school district had sufficient notice of her disability, the

court noted that Ms. Taylor began to act strangely at work.  After work, she hid herself in a train

station and disguised herself by covering her head with a scarf because she believed that someone was after her.  Ms. Taylor's behavior caused the school principal and administrative assistant for personnel to contact Ms. Taylor's son.  After being contacted by the school, Ms. Taylor's son drove her to a psychiatric hospital.  During the car ride, she began having paranoid delusions.  Ms. Taylor was admitted as a patient in the psychiatric hospital and remained in the hospital for approximately one month.  During Ms. Taylor's leave of absence, the son contacted the school principal and informed her that Ms. Taylor had bipolar disorder and would require accommodations when she returned to work.  He provided the principal with information he received from Ms. Taylor's doctors, including her diagnosis, treatment, and medications.  The hospital also sent a letter to the school district that provided the name and phone number of one of Ms. Taylor's physicians to answer any questions the school district may have.  The principal contacted one of Ms. Taylor's physicians.  Based on this evidence, the Third Circuit found that the "school district had more than enough information to put it on notice that [Ms.] Taylor might have a disability . . . ."  Id. at 314.  The court further noted that it was not essential that the principal or the plaintiff know the specific name of Ms. Taylor's condition.  See id.

In this case, by way of contrast, there is only Mr. Sever's threatening conduct immediately following employment discipline.  Plaintiff has presented no evidence of a pattern of bizarre behavior that could cause a reasonable person to suspect that Plaintiff was suffering from some condition that was substantially restricting his functioning in a major life activity.  No

hospitalization preceded the threatening conduct.  Nor does Mr. Sever's disclosure of a

preliminary finding of post traumatic stress symptoms suffice to show that Mr. Sever may have

been substantially limited in some major life activity.  An impairment having a causal

relationship to employment-terminating conduct does not necessarily have a substantial impact

on a major life activity.

As noted above, it is incumbent upon the employee to "show that the employer knew of

[the] employee's substantial physical or mental limitation" resulting from the diagnosed

impairment.  <u>Taylor v. Principal Financial Group, Inc</u>., 93 F.3d 155, 163 (5th Cir. 1996).  In

<u>Taylor</u>, the court confronted the question of whether the employee had adduced sufficient

evidence of the employer's knowledge of limitations caused by bipolar disorder so as to

preclude summary judgment in favor of the employer.  The record showed that Mr. Taylor met

with his employer to discuss his annual review.  During the meeting, the employer expressed

displeasure with Mr. Taylor's work.  Mr. Taylor then informed the employer that he had bipolar

disorder and that he wanted the employer's doctors to find out more about the disorder.  After

being informed of the disorder, the employer asked Mr. Taylor if he was alright.  Mr. Taylor

responded, "Yeah.  I guess."  At some point in the meeting, Mr. Taylor asked for a reduction in

his work objectives and a lessening of pressure.  Mr. Taylor did not inform the employer that he

was unable to do his job because of his illness.

In moving for summary judgment, the employer argued that Mr. Taylor failed to inform

anyone of his physical or mental limitations arising from his bipolar disorder.  The employer

further argued that it is not the illness the employer must accommodate, but rather any

limitations or restrictions caused by the illness.  The Fifth Circuit agreed with the employer,

explaining:

> For purposes of proving ADA discrimination, it is important to
> distinguish between an employer's knowledge of an employee's
> disability versus an employer's knowledge of any limitations
> experienced by the employee as a result of that disability. This
> distinction is important because the ADA requires employers to
> reasonably accommodate limitations, not disabilities. "The
> determination of whether an individual has a disability is not
> necessarily based on the name or diagnosis of the impairment the
> person has, but rather on the effect of that impairment on the life of
> the individual."  29 C.F.R. 1630.2(j), App. (1995); 42 U.S.C. §
> 12112(a)(5)(A) ("[T]he term 'discriminate' includes ... not making
> reasonable accommodations to the known physical or mental
> *limitations* of an otherwise qualified individual with a disability....")
> (emphasis added); 29 C.F.R. 1630.9, App. (1995) ("Employers are
> obligated to make reasonable accommodations only to the physical
> or mental *limitations* resulting from the disability that is known to
> the employer.") (emphasis added).

Id. at 164. See also Mihalko v. Potter, Civ. A. No. 00-2076, 2003 WL 23319594, at *10-11 (W.D.

Pa. Dec. 12, 2003) (finding that Plaintiff failed to establish that the employer knew that Plaintiff

was actually disabled because the employer did not know of any substantial limitations that

resulted from Plaintiff's depression).

As in Taylor, Sever has failed to produce any evidence that the employer had knowledge

of any limitations in concentrating, learning, and completing routine activities at the time of his

discharge.   The record does not state whether Dr. Boriosi's "initial observations of post

traumatic stress symptoms" involved Mr. Sever's substantial limitations in concentrating,

learning, and completing routine activities.  The record also does not show whether Mr. Sever

provided Defendants with medical reports discussing his substantial limitations prior to issuance

of the termination letter in 1994.  As the Fifth Circuit held in <u>Taylor</u>, I find it is insufficient to

merely inform the employer of a mental impairment without advising the employer of the

substantial limitations the impairment has on major life activities for which the employee seeks

accommodation.  Because Mr. Sever failed to establish that Defendants knew of any substantial

limitations he had in any major life activities, Mr. Sever has failed to establish as a matter of law

that Defendants knew that he was disabled at the time of the adverse employment action.

     Even if Plaintiff had established a genuine dispute of fact material to the questions of

disability and the employer's knowledge thereof at the time of the adverse employment action,

Defendants would still be entitled to summary judgment.  Plaintiff must show that he was

"otherwise qualified" to maintain his employment with the Postal Service.  <u>Donahue</u>, 224 F.3d at

229.  An employer may establish "qualification standards" that require that an employee not

pose a direct threat to the safety of other persons in the workplace.  <u>See</u> 42 U.S.C. § 12113(b).

The conduct that prompted Mr. Sever's discharge was so threatening as to support a criminal

conviction under 18 U.S.C. § 115, which makes it unlawful to threaten to assault or murder a

United States official with the intent to impede, intimidate or interfere with that official's

performance of official duties or with intent to retaliate against that official.  Clearly, an employer could conclude that engaging in such egregious conduct would disqualify the employee from continued employment.

"Although the ADA prevents an employer from discharging an employee based on his disability, it does not prevent an employer from discharging an employee for misconduct, even if that misconduct is related to his disability."  Fullman v. Henderson, 146 F. Supp. 2d 688, 699 (E.D. Pa. 2001), aff'd, 29 Fed.Appx. 100 (3d Cir. 2002)(Table).  Thus, for example, in Jones v. American Postal Workers Union, 192 F.3d 417, 429 (4th Cir. 1999), the court held that an employer could not be held liable under the ADA for terminating an employee suffering from schizophrenia and post traumatic stress syndrome after the employee had threatened a co-worker, stating that "[t]he law is well settled that the ADA is not violated when an employer discharges an individual based upon the employee's misconduct, even if the misconduct is related to a disability."  Similarly, in Hamilton v. Southwestern Bell Telephone Co., 136 F.3d 1047, 1052-53 (5th Cir. 1998), the court held that an employee could not maintain an ADA claim on the grounds that post traumatic stress disorder caused outbursts at work directed at fellow employees, explaining that "the ADA does not insulate emotional or violent outbursts blamed on an impairment."  Thus, the fact that Mr. Sever asked for the understanding of his employer after his outrageous behavior, suggesting that his conduct may have been attributable to post traumatic stress disorder, does not save this action from dismissal.

26

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment will be granted and Plaintiff's motion for summary judgment will be denied.  An appropriate order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RAYMOND A. SEVER,                          :
                                           :
            Plaintiff                      :
                                           :
      vs.                                  :      CIVIL ACTION NO. 3:CV-00-1271
                                           :      (CHIEF JUDGE VANASKIE)
WILLIAM J. HENDERSON,                      :
POSTMASTER GENERAL, et al.,                :
                                           :
            Defendants                     :

## ORDER

NOW, THIS 10th DAY OF AUGUST, 2005, for the reasons set forth in the foregoing

Memorandum, **IT IS HEREBY ORDERED THAT**:

1. Defendants' motion for summary judgment (Dkt. Entry 80) is **GRANTED**.

2. Plaintiff's motion for summary judgment (Dkt. Entry 81) is **DENIED**.

3. The Clerk of Court is directed to enter judgment in favor of Defendants and to mark

this matter **CLOSED**.


                              s/ Thomas I. Vanaskie
                              Thomas I. Vanaskie, Chief Judge
                              Middle District of Pennsylvania